In my opinion, this piece has two issues. One, they didn't have reasonable suspicion by their own admission. And two, if their actions were diligent, I'm really not sure what wouldn't be diligent. As the court knows, my client was detained unlawfully for two hours. And as Rodriguez said, the cops cannot, law enforcement cannot, prolong a traffic stop just to conduct a separate drug investigation once the mission of the stop is complete. I was bothered by the fact here, maybe you can clear it up. Mr. Pinex was asked for his name. He said, my name is Lester Johnson. And he gave a false, not only false name, but he gave a false social security number. They ran him through whatever database they could. And they couldn't find anybody with this name. He was there until two hours later, when they took his fingerprints. They found out that he was Lester Pinex. But I think the purpose of the traffic stop was to excite him for driving 100 miles an hour in a 70-mile zone. And he gave a false name that took time to run down until they got his name. How can I get a traffic ticket until I know his name? That's a really good question. I thought about that. Interestingly enough, they booked him in jail under Lester Johnson, the false name. His passenger gave correct information and they didn't get it back for whatever reason. But he did give correct information and didn't come back. All he had to do was issue the ticket. They booked him in jail that way. And how long does it take to realize you're not going to get a hit on that same information? He kept going and kept going. They couldn't get a hit until they took his fingerprints in jail. So, to a certain extent, the person who prolonged the investigation was Lester Pinex, also Lester Johnson. If they had given us Lester Pinex as part ones and given the correct Social Security number, you might say that there wasn't any prolongation of the process to give him a ticket. But there certainly did. So, in that case, my guess is they were after what was in that car before they even knew he had a fake name. Suppose there was a subjective improper motive that is likely to have used that enforcement in any case, does it? I think it does. Well, I think that's what Cassius says. It's just the opposite. It seems to me that we have cases all over the place, Graham and Wallace, saying the fact that the alleged traffic violation is a pretext for a stop is irrelevant, so long as the objective circumstance is to stop. He gave a false name. He gave a false name. So, they had to take him to jail to print him so they could find out his real name. That's right. But if you can't have a ticket, if you can't have a ticket and bring Lester Johnson and let him say, well, you can give me an elders name and use Lester Pinex. They broke the tickets out to Lester Johnson, Your Honor. Simply put, they waited to get that drug dog in. They wanted the drug dog 25 minutes into it. The tickets, they were writing slowly and buying time. They broke the tickets out to Lester Johnson. That's right. That's the official evidence of a pretext. God, no. They pulled him over for speeding. I'll give them that. But, right away, they said this takes to high hell or something like that. There was another thing that stunk about it, wasn't it? He didn't have any authority to be driving that car through the rental agreement, right? No, he didn't, Your Honor. Didn't they know that from the outset? The rental agreement had someone else's name, not he or the passenger. He was upset with the officers about that. He said, I am not on the rental agreement. I don't have a driver's license. Didn't they have the right to figure out if he was driving the stolen car? Well, they did. They contacted the rental car agency. People told them, oh, that car. Don't let him drive it away, right? Absolutely. They had secured the deal with the rental car. Prior to that, Your Honor, it was called the drug dog before they even found out what was going on with the rental car. In a rental car, no driver's license. Okay, fine. You're not supposed to be driving that car. What about that says I have drugs and a gun in my trunk? These officers were afraid they were going to be ambushed. And how many kids does this woman have? It was ridiculous. I am offended by their behavior as a citizen. I understand he gave a wrong name. He should not have done that. And I-84 is a drug highway? Okay, at this point, and with all due respect, what highway isn't a drug corridor? I mean, Montana is... You have to go through Montana to get from... It's a big state. Drugs are everywhere. How far along was it into the stop that they confirmed that the woman who rented the car had actually given them permission to drive? I don't know that they ever did confirm that she gave them permission to drive, but... So you just said a minute ago that in response to Judge Lambert's question, you know, black sisters are going to go, well, you know, Ruth's name, this name, Wesker Johnson, Social Security, I think that there's another piece of information that they gave her. They don't get any confirmation. Somebody else... The rental car is in somebody else's name. They may not have reasonable suspicion about drugs, but, you know, they might have reasonable suspicion that this is a stolen vehicle. And they have an unright to investigate that to confirm that it's not a stolen vehicle. How long did it... Well, I don't know about... How long did it... At what point did they confirm... Were they able to confirm or, you know, dispel any suspicion that this might have been a stolen car? Where does that come from? They never looked into whether or not it was stolen. They talked to the rental car agency and they had agreed to secure the rental car for the agency. And the owner of the rental car was very grateful and so grateful, he was conspiring with these people to deal drugs with them. They were going to secure the vehicle and that was done. The tickets were written out to Wesker Johnson. They made arrangements with the rental vehicle. At that point, they could have issued the tickets and sent them back in. It didn't take two officers. How far into the stop is this? How far into the stop? How far into the stop? Oh, about 50 minutes into the stop everything had been done. Everything. And I'm giving them a couple of minutes. It's a long stop. Do you want to address the sales industry? Um, well, yeah, that's interesting too. Um, again, it's beyond me how a gun locked in one suitcase in a trunk is going to facilitate drug dealing of the drugs that are locked in a separate suitcase also in the trunk. Nowhere near Wesker Pimax. It's a prosecutor's interpretation of a prosecutor Possession, correct. Yes. No, just possession. Possession. Correct. Yeah, it wasn't possession. It was attempted to steal. It was a quantum. It was a possession quantum. Yes, exactly. And they weren't even experts. They were in a separate suitcase. You don't think that involves his right to possess the drugs? I don't see how it could. Hang on a second, let me unlock this. Oh wait, I've got to unlock this. Let me get my headphones. Thank you. May it please the court. James Darker from the District of Montana for the United States. The vast bulk of this was done much related to the basic mission of a traffic stop which was complicated by the decisions that Wesker Pimax made causing the delay, as Jeff Bay had noted. The fact that he gave a false name false information prevented the officers from being able to verify his identity and complete the mission of a traffic violation required them to take him back to the station and book him and bring him before the State Court of Judgment before they could resolve the traffic violation. That's confirmed. And so it's a record based for the discussion between the State Judge and Letter Sheriff Fulton regarding the need to bring him before the State Court of Judge. So in the case of looking for the driver's name through the system that they're going to get back It's not always the case Mr. Tyler, they rarely give any correct information He gave them at least the correct name. I don't think it's they didn't find anything in the record. He said that they asked for Tyler's social security number and he had a hard time when they gave him his social security number. That's true. And I don't know whether or not that was the correct social security number or not. But they're only the correct name. That's absolutely true. So it's not true as your Honor said. It is not the case that you always get a correct the correct management here. The problem is with their identities. What do they do? I mean, if you don't have a name, you're stopped for a decade or so. They didn't have a name. Then they run into the system and the thing comes up. What do you do? If that was the only the answer here, I think that necessarily requires more digging. Okay, so what's your address? Why isn't this coming back correctly? I think what you would have in a normal circumstance is some back and forth about that issue and get that resolved identity question resolved. Here there was many more problems with the identity just the false name created this problem. What's the impact when they get engaged in that movie pursuing a separate interview with each one? In fact, I interviewed Tyler and I forget the name of the officer. They had already looked through the brief and said, yes, you will be the next one to run into the bed. Yes, that's correct. They had already driven a thousand miles. That's correct. That's absolutely correct. In addition, they also knew there were a number of factors that this court and other courts have found consistent with the drug trafficking run that were present here. Two individuals without any identification despite the fact that they're going halfway across the country the fact that they were in a rental car to which they were authorized to drive on a four-day trip from they only had four days to get from Seattle to North Dakota and back which is a known drug trafficking ground. Those are factors that are consistent with a drug trafficking trip. When you set those next to what they found out about why this trip was implausible and their stories were inconsistent you have a strong basis for reasonable suspicion with respect to the stop and therefore they could go forward and conduct separate interviews and do everything that they did. Yes. I think the separate interviews were necessary because either of them were carrying again, all of these factors were known that they were didn't have the identification on the rental agreement the questions about the trip in addition, since Mr. Pinek said he didn't have any identification or since he didn't have a license, he had to conduct further interviews to see whether or not Mr. Tyler was a licensed driver and so all of that time period from 11 to 24 minutes where they gathered these stories and were able to see what was implausible about them. In addition with respect to Mr. Tyler, there's also been some basic impossibility about his story. He claimed to be in the Navy but had no military ID, no leave papers didn't know who his commanding officer was, didn't know where he was stationed all of those additional factors about the impossibility of the situation here so they couldn't let the passenger drive the car because he didn't have a license either yes, both because he didn't have a license and because as they subsequently learned, neither of them were on the rental agreement but they confirmed that the car needed to be impounded so the vast bulk of the stock was related to the basic mission of the stock, establishing the identity and dealing with the violations and then the other part of the basic mission of the stock was making sure the driver was authorized to be driving that vehicle if he was traveling it and since he wasn't, he was necessary to be impounded. How long did it take to find out that the actual legacy of the car had also rusted? At the 42 minute mark is when the officers learned that it's not clear that they learned that she had authorized them to drive the car but it is clear that they had talked to her that the rental car company had talked to her and that the rental car company wanted the car back they knew that there was a connection between when the statement by the rental car company was that Ms. Smith had knew that he had the car that Tyler did actually have the car but didn't know that he was in Montana or that he was traveling. Was this a rental agreement which allowed someone other than the renter to drive the car? It did not. It was not. And I would like to invite the court's attention to with respect to the diligence issue to page 74 and 76 of the record where the district court pointed out that the delay from the time the drug dog and the record were called to the time the stop was completed was not due to a lack of diligence on behalf of the officers it was due to the isolated location of the stop and for realities in rural Montana and I would point out that that finding and the inferences from that finding are entitled to deference as the United States Supreme Court said in Cornelius both judges for making findings of fact and inferences from those related to local circumstances are entitled to due weight so I think that it is important for this court's way in terms of dealing with the diligence just to a place in Montana it took time to get the car out there and the dog to run the stop If the court has no further questions Yes, absolutely So do you agree with your... No, I do not He was the only offense was possession Yes How does that fit in the drug in the car in a separate bag? Well, the reason In position under what is it? 2.1B2 B1 I don't know We agree with which one it is I would point out that this is reviewed for it's a factual finding in the district court reviewed it made this finding and the reason for it is simple it's not just that they were both in the truck we know that Pinex rented this car for the purpose of making this trip this is just a car that he happened to have and it happened to be there he rented it for this trip he packed or at least knew there was packed both the gun and the drugs he mentioned them in the same breath in his discussion in the police car he says the guns don't have a bumper in the trunk all of those were absolutely what's the other offence? the other offence possession of drugs possession we're dealing with possession for purposes of distribution we're dealing with possession so how does the claim enhance or embolden him to possess the gun I don't quite understand because your honor as the justice case pointed out being out in public with a valuable amount of drugs and possessing a gun for possession  what was that? do we know? I don't know in terms of valuable possession for personal use I was pointing out the court of justice pointed out that even a personal use amount of drugs would be not equal enough for that person to require protection or where protection could embolden them and again I would point out that the gun wasn't accessible to him well, but he was also on a it was in a bag a suitcase but it was for the purposes of the trip but this is a case when you make a decision about what to pack for your car trip you're thinking about that stuff all together in terms of what you're packing what you're going to use when you get there I think the court was well within its discretion to find those facts in support of the idea that this isn't just going out in public in the street this is going out in public going halfway across the country he chose to pack the gun in the trunk, in the suitcase and the drugs are in a separate container how can you say that this is not an accessible container they were both his luggage was in the trunk for the purposes of the trip I agree with that but I don't think that makes the district court's findings that the idea that you pack a gun and the drugs for this trip it can't serve the role of emboldening the drug possession I don't know what else to say for the questions take your round as far as I know there is no rural Montana exception to the fourth amendment let's not forget here they never once asked if the car was stolen that didn't cross their mind 25 minutes into that stop before they called the rental car agency and found out anything they asked for a drug talk and you know what they were told by the resident that used their insurance no you don't have a reasonable suspicion they told that agent we don't know who this guy is that's the problem the answer was no you don't get the dog and they didn't take him to jail to get fingerprints again the tickets were written out to Lester Johnson they took him to jail so that dog can come and sniff period it's obvious and I think it is disgusting for a country if there are any last comments  thank you
judges: Paez, Bea, Lamberth